UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARSHA FAHEY,**<br>Plaintiff,<br>**v.**<br><br>**JOHN C. FAHEY,**<br>Defendant. | **2:25-CV-11139-TGB-DRG**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF NO. 14)** |

Plaintiff Marsha Fahey—acting as Personal Representative of the Estate of her deceased husband Kevin Fahey—brings this action against Defendant John Fahey alleging the following counts: (I) Breach of Contract; (II) Equitable Accounting and Wind-up; and (III) Declaratory Relief. ECF No. 13. Defendant has filed a Motion to Dismiss Plaintiff's Second Amended Complaint. ECF No. 14. For the following reasons, the Court **DENIES** Defendant's Motion to Dismiss.

# I. BACKGROUND

## A. Factual Background

As alleged in Plaintiff's Second Amended Complaint, Decedent, Kevin Fahey, and Defendant John Fahey were brothers who "purchased, restored, and/or sold multiple vehicles together" between 1994 and 2024. ECF No. 13, ¶ 11. Plaintiff alleges that the two brothers did so as part of a joint venture which began with the purchase of a 1969 Ford Shelby in 1994. *Id.*, ¶¶ 9–10. According to Plaintiff's allegations, both brothers

shared responsibilities for the purchase of these vehicles. *Id.*, ¶¶ 12–14. "In some instances, Plaintiff provided the funds for the purchase of a given vehicle." *Id.*, ¶ 12. In others, "Defendant provided the funds." *Id.*, ¶ 13. "And yet in other instances," Plaintiff's Decedent "fronted the funds for the purchase of a given vehicle and Defendant reimbursed him at a later date/time." ECF No. 13, ¶ 14.

According to the agreement's terms, the brothers agreed to:

a. Purchase, restore and sell multiple vehicles together;
b. Share in the profits and losses associated with their venture;
c. Contribute their respective skills, property and income to the venture;
d. Maintain a community of interest and joint control over the subject matter of their venture; and
e. Wind their project up upon the death of either Fahey Brother and, in so doing, reconcile the relative contributions of each venturer at that time.

ECF No. 13, ¶ 25.

Plaintiff's Decedent passed away on January 3, 2024. ECF No. 13, ¶ 20. As Marsha Fahey was managing the estate of her deceased husband, she found that "Defendant's name was still listed on the title" of the Ford Shelby, one of several vehicles the brothers purchased together during the joint undertaking. *Id.*, ¶ 22. According to Plaintiff, she requested that Defendant "honor his agreement with the Decedent by signing the Shelby's title over to her . . . or, alternatively, by reimbursing the Estate for a pro-rata share of the repair/restoration

costs." *Id.* Defendant refused to do so, leading Plaintiff to file suit. *Id.*, ¶ 23.

### B. Procedural Background

Plaintiff filed her Original Complaint on April 21, 2025. ECF No. 1. Defendant filed a Motion to Dismiss that complaint on May 16, 2025. ECF No. 6. On June 2, 2025, Plaintiff filed her First Amended Complaint. ECF No. 7. Defendant followed with a Motion to Dismiss Plaintiff's First Amended Complaint on June 16, 2025. ECF No. 8. On March 3, 2026, the Court entered an Order granting Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 12. Plaintiff then filed her Second Amended Complaint on March 23, 2026. ECF No. 13. Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. ECF No. 14. Plaintiff has filed her Response, ECF No. 15, and Defendant has filed his Reply, ECF No. 16. The matter is now fully briefed.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'"

*Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The Court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) ("To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (citation omitted).

## III. DISCUSSION

### A. Breach of Contract [Count I]

#### 1. *Differing allegations in First Amended Complaint and Second Amended Complaint*

Defendant first argues that Count I warrants dismissal because the "First Amended Complaint alleges an agreement fundamentally different from the one that Plaintiff's attorney conjured up for the Second Amended Complaint." ECF No. 14, PageID.488. Defendant argues that Plaintiff is not entitled to change her allegations because the documents attached to her First Amended Complaint supported the initially alleged agreement related only to the 1969 Ford Shelby. ECF No. 14, PageID.489 (citing *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007)). The Court disagrees.

At bottom, Defendant argues that Plaintiff should not be free to change her theory of the case when the evidence she previously presented supported a different theory. But Plaintiff is not so restricted. As she correctly identified, "[n]ormally, an amended complaint supersedes the original complaint." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009); *see also Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2010) ("[T]he amended pleading supersedes the original pleading, i.e., 'the original pleading no longer performs any function in the case and any subsequent motion

made by an opposing party should be directed at the amended pleading . . . .'"); *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463 (6th Cir. 2019) ("Ordinarily, a plaintiff is considered the master of his complaint."). Thus, in filing her Second Amended Complaint, Plaintiff was free to provide new or different allegations so long as they plausibly state a claim upon which relief could be granted and do not belie her attached documents.

Further, Plaintiff's allegations do not appear to contradict the relevant exhibit, the check from Plaintiff's Decedent to Defendant, ECF No. 7-3, PageID.74. Plaintiff's theory as expressed in the previous complaint was that this check was consideration for "Defendant's ownership interest." ECF No. 7, ¶ 11. Now, Plaintiff alleges that this payment was part of a larger joint undertaking in which Plaintiff's Decedent and Defendant would "[p]urchase, restore and sell multiple vehicles together," with both responsible for providing the funds at times. *Id.*, ¶¶ 11–14, 25. That check, also attached in Plaintiff's Second Amended Complaint, is offered as an example of one of the various ways the brothers financed these transactions. *Id.*, ¶ 9. Beyond simply highlighting that the allegations are different, Defendant fails to explain how the new allegations and exhibits are contradictory.

Thus, the Court will not dismiss Count I based on the differing allegations.

*2. Plausibility*

Defendant next argues that Count I should be dismissed because "Plaintiff fails to even plausibly allege the existence of the so-called 'agreement.'" ECF No. 14, PageID.489. Specifically, Defendant argues that Plaintiff failed to allege whether the contract was written or oral, that the allegations of an alleged agreement are "self-serving and intended only to overcome the obvious deficiencies of the two prior dismissed pleadings," and that Plaintiff failed to plead any facts to show how she would "ever have known about any alleged contract / joint venture." ECF No. 14, PageID.490–91. The Court disagrees with each contention.

Plaintiff was not required to allege the type of contract so long as she met the other requirements imposed by Michigan law. To bring a breach of contract claim in Michigan, a plaintiff must show that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 100 (2016). To prove that there was a valid contract, a plaintiff must prove five elements: "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id.* at 830 (citation omitted); *see also Abbas v. Bank of Am. N.A.*, No. 1:12-CV-607, 2013 WL 1340309, at *5 (W.D. Mich. Mar. 29, 2013) (analyzing breach of contract claim based on the contract being

written or oral because plaintiff did not allege the type of contract). Because Defendant does not dispute breach or damages, the Court will focus on whether Plaintiff plausibly alleged that there was a valid contract.

Several of the elements for proving a valid contract are not disputed by the parties. The parties do not dispute whether either party to the contract was competent, or if this joint undertaking was a proper subject matter for a contract. Further, based on the allegations in the Second Amended Complaint, legal consideration existed. "To have consideration there must be a bargained-for exchange." *Gen. Motors Corp. v. Dep't of Treasury*, 466 Mich. 231, 240 (2002). Both brothers agreed to jointly buy, restore, and sell cars, after which they would "receive proportionate/pro-rata value for his relative contribution(s) to the same." ECF No. 13, ¶¶ 10–15. Thus, both agreed to invest time or energy in exchange for financial upside.

Mutuality of obligation also exists because it is closely tied to the concept of legal consideration. *See Reed v. Citizens Ins. Co. of Am.*, 198 Mich. App. 443, 449 (1993), *overruled on other grounds by Griffith ex rel. Griffith v. State Farm Mut. Auto. Ins. Co.*, 472 Mich. 521 (2005) ("By 'mutuality of obligation' is apparently meant that there must be consideration, without which there is no obligation on either party because there is no binding contract.") (cleaned up). "Mutuality of obligation means that both parties to an agreement are bound or neither

is bound." *Reed*, 198 Mich. App. at 449. According to the Second Amended Complaint, both brothers were required to participate in the joint undertaking and share in its profits and losses. ECF No. 13, ¶ 25. Thus, Plaintiff has plausibly alleged this element as well.

Although Defendant does not expressly indicate which element of a valid contract Plaintiff has failed to allege, mutuality of agreement seems to be the central issue. Indeed, the fact that Defendant argues that a joint venture agreement never existed would imply that he did not believe he ever agreed to such a contract. *See* ECF No. 14, PageID.490. To prove mutuality of agreement, Plaintiff must show "mutual assent on all essential terms of a contract, and that the parties' assent is manifested in some objective form." *Reed*, 198 Mich. App. at 449. "Mutuality of assent can be shown if the contract is accepted and acted on, or is delivered and acted on, in essence, whether the parties acceded to the terms of the agreement by their conduct." *Gilliam v. Williams*, No. 219539, 2000 WL 33416903, at *1 (Mich. Ct. App. July 18, 2000) (cleaned up). Thus, it can be shown by the "parties' affirmative conduct." *Garry Harmon Cement Contractor, Inc. v. Highland Dairy, LLC*, No. 303078, 2012 WL 1605334, at *3 (Mich. Ct. App. May 8, 2012); *see also UPF, Inc. v. Motoman, Inc.*, No. 05-CV-74929, 2006 WL 1195825, at *3 (E.D. Mich. May 2, 2006) ("Under Michigan . . . law, the parties' conduct is sufficient to establish a contract.").

Defendant argues that the allegations related to the agreement are sparse, only amounting to "five attorney drafted bullet points." ECF No. 14, PageID.489. He is correct that Plaintiff did not provide specifics such as the date or location when the contract was formed, but the Court is unaware of any authority that requires such allegations. *See Peyton v. All Am. Recycling, Inc.*, No. 23-CV-11885, 2025 WL 882303, at *5 (E.D. Mich. Mar. 10, 2025). Instead, Plaintiff can rely on the affirmative conduct of both parties to the agreement, which shows they both chose to be bound by it. The Second Amended Complaint contains attachments which show that both brothers were involved with purchasing several of the vehicles relevant to the joint undertaking. *See* ECF Nos. 13-4, PageID.331–34 (showing Plaintiff's Decedent wiring money to purchase a Porsche that was in both brothers' names), 13-6, PageID.339 (showing Defendant transferring money to Plaintiff's Decedent for the Camaro[1]). Because they both took steps to purchase the relevant vehicles, that conduct supports Plaintiff's theory that both parties to the agreement agreed to participate in the joint undertaking.

---

[1] The Court notes that the email confirmation in this document was sent in March 2013, even though the email references a "2020 Camaro." ECF No. 13-6. According to Plaintiff's Second Amended Complaint, the brothers never repaired a 2020 Chevrolet Camaro, but they did repair a 2013 Chevrolet Camaro and a 2020 Chevrolet Corvette. ECF No. 13, ¶ 11. Because the email confirmation was clearly sent in 2013 and Plaintiff alleges that the brothers purchased a 2013 Camaro, it appears that the year reference of 2020 must have been an error.

Defendant's remaining plausibility arguments fare no better. As stated previously, Plaintiff was not required to allege the same theory of the case in her Second Amended Complaint. Defendant's claims about how "self-serving" the Second Amended Complaint is, are based on what Plaintiff previously alleged in her prior complaints.[2] But he should have focused his motion specifically on the merits of the amended pleading. *See Clark*, 413 F. App'x at 811.

Defendant's argument about Plaintiff's knowledge is similarly unavailing. Above, the Court outlined the requirements to prove a breach of contract claim. Nowhere did it mention anything about Plaintiff needing to prove her own personal knowledge about the contract. And Defendant does not cite any authority showing that she was required to. Accordingly, Plaintiff has plausibly alleged her breach of contract claim.

---

[2] The Court also notes that Plaintiff's allegation that the brothers agreed to wind up the joint venture at the death of either brother is not inconceivable. Michigan law recognizes that death can dissolve a joint venture. *See Posner*, 356 Mich. at 10 ("Dissolution has been effected, pendente, by the passing of coadventurer LaJoie."). Additionally, under Michigan partnership law, closely related to joint ventures, the death of any partner is a cause of dissolution. Mich. Comp. Laws § 449.31. And "[u]nless otherwise agreed, the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs . . . ." *Id.*, § 449.37. Consequently, these kinds of agreements where a joint undertaking is wound up after the death of one of its members is plausible.

#### *3. The Court's Previous Order*

Finally, Defendant argues that Plaintiff's breach of contract claim should be dismissed because of "Plaintiff's failure to comply with the Court's March 3, 2026 Order." ECF No. 14, PageID.491. But Defendant's position is based on a misunderstanding of the Court's direction. The Court simply required Plaintiff to file her Second Amended Complaint within 21 days of the March 3, 2026 Order if she chose to file at all. ECF No. 12, PageID.312. The portion of the Opinion referenced by Defendant simply explained what Plaintiff would need to do if she included a breach of contract claim based on her *then-existing theory*. It did not mandate that Plaintiff limit any amendment to that single theory. Because the Second Amended Complaint is the "legally operative complaint," *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000), Plaintiff need not heed the Court's guidance on an abandoned theory. However, Plaintiff is still required to state a claim upon which relief can be granted. *See Twombly*, 550 U.S. at 570. As stated previously, the Court finds that Plaintiff has done so.

Thus, viewing the facts in the light most favorable to Plaintiff, Defendant's Motion to Dismiss Count I is **DENIED**.

### B. Equitable Accounting and Wind-Up [Count II]

#### *1. Plausibility of joint venture*

Defendant first argues that Count II must be dismissed because Plaintiff has failed to plausibly allege a joint venture. ECF No. 14,

PageID.492. He bases that argument solely on his reasons for opposing Count I. *Id.* As previously discussed, the Court finds that Plaintiff has plausibly alleged a breach of contract claim, but the Court's inquiry does not stop there. To plausibly allege a joint venture, a plaintiff must show: "(a) an agreement indicating an intention to undertake a joint venture; (b) a joint undertaking of (c) a single project for profit; (d) a sharing of profits as well as losses; (e) contribution of skills or property by the parties; (f) community interest and control over the subject matter of the enterprise." *Meyers v. Robb*, 82 Mich. App. 549, 557 (1978).

The Court's discussion of Count I resolves many of these elements. Plaintiff has plausibly alleged an agreement between the Decedent and Defendant. That agreement involved both brothers contributing to the purchase, restoration, and sale of multiple vehicles, ECF No. 13, ¶¶ 11–14, which also qualifies it as a joint undertaking.

Plaintiff has also plausibly alleged profit-sharing, contribution of skills or property, and community interest and control. She specifically alleged that the two brothers agreed to share profits and losses, ECF No. 13, ¶ 25, and provided information on both brothers being responsible for funding the purchases of these vehicles, *see* ECF Nos. 13-4, PageID.331–34 (showing Plaintiff's Decedent wiring money to purchase a Porsche that was in both brothers' names), 13-6, PageID.339 (showing Defendant transferring money to Plaintiff's Decedent for the Camaro). Viewing these facts in the light most favorable to Plaintiff, the Second Amended

Complaint with the attached exhibits plausibly alleges both that the parties to the agreement shared profits and losses and contributed property to the joint undertaking. Finally, Plaintiff's exhibits showing both brothers holding title to vehicles relevant to the joint undertaking show community interest and control over the subject matter of the enterprise. *See* ECF No. 13-3, PageID.328; ECF No. 13-5, PageID.337.

But one of the elements of a joint venture, that it is for "a single project for profit," is not alleged in the complaint. Indeed, the complaint alleges that the brothers agreed to undertake a series of multiple projects for profit. Some courts have been willing to find a joint venture despite more involved business activity. *See, e.g.*, *Luxton v. Leja*, No. 14-CV-416-JED-PJC, 2016 WL 4997885, at *6 (N.D. Okla. Sept. 19, 2016) (applying Michigan law and finding that a single project for profit existed between two companies jointly operating a trucking business). However, Michigan courts generally require a joint venture to involve a single and isolated transaction, though these single transactions can be complex. *Hathaway v. Porter Royalty Pool*, 296 Mich. 90, 102 (1941) ("[S]uch an enterprise differs from a partnership because it relates only to a single transaction."), *amended on other grounds*, 296 Mich. 733 (1941); *EWI Worldwide, Inc. v. Lifestyle Retail Partners, LLC*, No. 295167, 2011 WL 184079, at *3 (Mich. Ct. App. Jan. 20, 2011) ("In *Fletcher v. Fletcher*, 206 Mich. 153, 167; 172 NW 436 (1919), our Supreme Court observed, 'In nearly all the cases cited by counsel upon the subject of joint adventure,

it appears that the adventure related to a single and isolated transaction. It is true that there are some exceptions to this statement, but in the main it will be found to be true.'"). Because Plaintiff's agreement was to buy, restore, and resell multiple vehicles over time, the complaint does not appear to allege a single project for profit as would be required to allege the existence of a joint venture.

But that insufficiency is not necessarily fatal to Count II's claim for Equitable Accounting and Wind-Up because the facts alleged are sufficient to support the existence of a partnership agreement under Michigan law. In Michigan, "[a] partnership is an association of 2 or more persons . . . to carry on as co-owners a business for profit." Mich. Comp. Laws § 449.6(1). Since the brothers' agreement contemplated them sharing the profits and losses associated with the joint undertaking, Plaintiff has sufficiently alleged that the brothers were carrying on as co-owners a business for profit. *See Hathaway*, 296 Mich. at 102 (finding that joint ventures differ from partnerships only in that they only involve a single transaction); *In re Kraus*, 37 B.R. 126 (Bankr. E.D. Mich. 1984) (finding that parties created a partnership rather than a joint venture because it involved more than a single transaction). Treating Plaintiff's alleged agreement as that for a partnership rather than a joint venture changes none of the analysis for the breach of contract or accounting claim. So Plaintiff's allegations still support her accounting claim, even though she has incorrectly labeled her agreement. *See Brown v. Comm'r*

*of Soc. Sec.*, No. 5:14 CV 940, 2015 WL 4275556, at *11 n.4 (N.D. Ohio July 14, 2015) ("[T]his error makes no difference to the outcome of this analysis and therefore the Court will disregard it."); *United States v. Friskey*, No. CRIM.A. 13-12-DLB, 2014 WL 6698807, at *2 n.4 (E.D. Ky. Nov. 26, 2014) ("That error does not impact the Court's analysis in any way."), *aff'd*, 698 F. App'x 252 (6th Cir. 2017); *Davidson v. Comm'r of Soc. Sec.*, No. 2:16-CV-0102, 2018 WL 4690962, at *7 (M.D. Tenn. July 20, 2018) ("However, this mistake does not undermine her analysis."), *report and recommendation adopted*, No. 2:16-CV-00102, 2018 WL 4680327 (M.D. Tenn. Sept. 28, 2018).[3]

Thus, because Plaintiff has plausibly alleged a partnership, the Court will not dismiss Count II based on her failing to plausibly allege a joint venture.[4]

---

[3] At the motion-to-dismiss stage, the Court is already required to disregard legal conclusions. *Iqbal*, 556 U.S. at 678; *Handy-Clay*, 695 F.3d at 539. Plaintiff's allegation—that Defendant entered a joint venture agreement specifically—is precisely that. So the Court need not consider Plaintiff's incorrect legal conclusion to determine whether she has plausibly stated a claim upon which relief can be granted. Instead, the Court is required to determine whether the factual allegations supported Plaintiff's claim for an accounting based on the nature of the agreement and conduct of the two brothers.

[4] Based on the preceding analysis the Court will refer to this joint undertaking as a partnership rather than joint venture for the remainder of the Opinion and Order.

### 2. *Repackaging previous "Dissolution of Joint Venture" claim*

Defendant argues that Plaintiff is not entitled to relief on Count II because it is simply a repackaged version of Plaintiff's "Dissolution of Joint Venture" claim from the First Amended Complaint. ECF No. 14, PageID.492. First, as stated previously, Defendant's attempts to attack Plaintiff's Second Amended Complaint by comparing it to previous versions are misguided. *See Clark*, 413 F. App'x at 811. Second, the Court dismissed Plaintiff's previous claim because it was not a cause of action but merely a remedy. ECF No. 12, PageID.308–10. But a cause of action for an accounting is available under Michigan law. *See* Mich. Comp. Laws §§ 449.37 ("Unless otherwise agreed, the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs."), 449.22 ("Any partner shall have the right to a formal account as to partnership affairs: (a) If he is wrongfully excluded from the partnership business or possession of its property by his copartners, [or] . . . (d) Whenever other circumstances render it just and reasonable."), 449.21 ("Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property . . . .").

Thus, the Court will not dismiss Count II on this basis.

### 3. *Plausibility of accounting claim*

Defendant argues that Plaintiff has not plausibly alleged an accounting claim because she failed to show "mutual demands, a series of transactions on one side, and payments on the other." ECF No. 14, PageID.493 (citing *Laubengayer v. Rohde*, 167 Mich. 605, 611 (1911)). The Court disagrees.

Defendant is correct that an accounting requires a series of mutual demands. *Boyd v. Nelson Credit Centers, Inc.*, 132 Mich. App. 774, 779 (1984) (quoting *Laubengayer*, 167 Mich. at 611). But the Court finds that Plaintiff has plausibly alleged precisely that. Plaintiff has shown that both the Decedent and Defendant shared financial responsibility for purchasing the cars relevant to the partnership. *See* ECF Nos. 13-4, PageID.331–34 (showing Plaintiff's Decedent wiring money to purchase a Porsche that was in both brothers' names), 13-6, PageID.339 (showing Defendant transferring money to Plaintiff's Decedent for the Camaro). Thus, money flowed in both directions, and the partnership involved "debits and credits on both sides of the account." *See Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, P.C. v. Bakshi*, 483 Mich. 345, 355 (2009) (quoting Black's Law Dictionary (7th ed. 1999)).[5]

---

[5] Although this case does not explicitly relate to accounting claims, the Court finds the Michigan Supreme Court's discussion of mutual accounts informative for understanding how a plaintiff can show mutual dealings.

Defendant's citation to *Laubengayer* does not strengthen his argument for dismissing Count II. *Laubengayer* simply highlights that plaintiffs are not entitled to an accounting when it's clear that they simply seek a "money judgment for damages." *Laubengayer*, 167 Mich. at 611. Where the plaintiff is fully apprised of the amount owed, there is no need for an accounting. *Id. Laubengayer's* progeny highlights the ruling's central focus. *See Boyd*, 132 Mich. App. at 779 ("An accounting may not be had where the action is for a specific sum due under a contract."); *Macey v. Archdiocese of Detroit Priests' Pension Plan, Inc.*, No. 318617, 2015 WL 1214589, at *3 (Mich. Ct. App. Mar. 17, 2015) ("An accounting is unnecessary where there are 'no items of which the complainant is not fully informed.'") (cleaned up); *Cyril J. Burke, Inc. v. Eddy & Co. Inc.*, 332 Mich. 300, 303 (1952) (holding that plaintiff was not entitled to accounting claim because discovery was adequate to determine "the amount of profits received by defendant").

Although Defendant has not raised this point, it may be the case that an equitable accounting will not be required because "discovery is sufficient to determine the amounts at issue." *Bowman v. Dentsply Sirona, Inc.*, No. 1:22-CV-191, 2022 WL 18540561, at *2 (W.D. Mich. Oct. 19, 2022) (citing *Boyd*, 132 Mich. App. at 779). Indeed, many courts find that an accounting claim is only proper when "the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469,

478 (1962) (cleaned up); *see also Boyd*, 132 Mich. App. at 779–80 ("The allegations in plaintiffs' complaint do not support an inference that the transactions at issue are so complex that ordinary discovery procedures would be inadequate."); *Dinoto v. Nu Way Invs., Inc.*, No. 319762, 2015 WL 2448520, at *2 (Mich. Ct. App. May 21, 2015) ("[W]here discovery is sufficient to address the amounts at issue, an accounting is unnecessary.")

But the Court recognizes that Michigan courts are willing to allow plaintiffs to bring such claims when seeking to balance the accounts of a partnership or joint venture. Mich. Comp. Laws §§ 449.37, 449.22, 449.21; *Byrne v. Colone*, 2007 WL 3274616, at *3 ("An action for an accounting may be used to have the affairs of the joint venture wound up."); *Bodman*, 295 Mich. at 198–99 (allowing an accounting claim based on one co-adventurer seeking to determine the financial responsibility of each co-adventurer who jointly purchased a real estate property).

At this early stage, the Court will not dismiss Plaintiff's accounting claim based on Defendant's plausibility argument. If in the course of discovery, it is the case that Defendant is unable or unwilling to provide Plaintiff with documents necessary to determine the amounts owed to each party, her accounting claim will persist. However, if Plaintiff is able to discover all the information necessary to determine what she is owed, her accounting claim may be subject to dismissal on summary judgment. *See Skill v. Palamarchuk*, No. 23-13206, 2026 WL 2943095, at *16–17

(E.D. Mich. Sept. 30, 2026) (dismissing plaintiff's accounting claim as to records that could have been obtained through discovery but maintaining it for records that plaintiff attempted but could not obtain through discovery).

Thus, viewing the facts in the light most favorable to Plaintiff, Defendant's Motion to Dismiss Count II is **DENIED.**

### C. Declaratory Judgment [Count III]

Plaintiff's final count requests a declaratory judgment that finds that a joint venture existed, finds that it has not yet been dissolved, and grants "any other relief deemed fair and equitable under the circumstances of this case, and which will facilitate the wind-up of the parties' venture." ECF No. 13, PageID.320–21. As the Court stated in its March 3, 2026 Order, "a party may seek declaratory judgment on the question of whether a joint venture has been dissolved." ECF No. 12, PageID.309 (emphasis omitted) (citing *Kay Inv. Co.*, 273 Mich. App. at 435). Michigan law also allows courts sitting in equity to decree dissolution of a joint venture. *Posner v. Miller*, 356 Mich. 6, 9 (1959). The Court can still grant that relief even if Plaintiff's Decedent and Defendant were partners rather than co-venturers. *See Kay Inv. Co.*, 273 Mich. App. at 444–45 (ruling that parties entered a joint venture rather than a partnership and finding that there was no dissolution of the alleged partnership); Mich. Comp. Laws § 449.32 ("On application by or for a partner the court shall decree a dissolution whenever: . . . (b) A

partner becomes in any other way incapable of performing his part of the partnership contract, . . . (f) Other circumstances render a dissolution equitable.").

Defendant argues that Plaintiff's "Declaratory Judgment count – which is merely derivative of the other claims – must also be dismissed." Although Defendant is correct that the "Declaratory Judgment Act, 28 U.S.C. § 2201 . . . does not create an independent cause of action," *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007), the Court has denied Defendant's Motion to Dismiss the previous counts. Thus, because the Court has "jurisdiction already under some other federal statute," Defendant's argument no longer applies. *Id.*

Additionally, the Court is satisfied that Plaintiff has alleged a "'definite and concrete' dispute that would be resolved by the Court deciding whether the alleged [partnership] has been dissolved." ECF No. 12, PageID.311 (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937)). Based on Plaintiff's current theory of the case, Defendant has failed to fulfill his obligations to wind up the partnership. ECF No. 13, ¶¶ 26–27. By declaring that a partnership did exist and was not dissolved, Plaintiff would be that much closer to getting the equitable accounting and distribution of profits and losses that she requested.

Thus, viewing the facts in the light most favorable to Plaintiff, Defendant's Motion to Dismiss Count III is **DENIED.**

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss (ECF No. 14).

**SO ORDERED.**

Dated: November 24, 2026

s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE